NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUISEPPE GERVASIO, : | |
| Plaintiff, : | |
| v. : | Hon. Dennis M. Cavanaugh |
| CONTINENTAL AIRLINES, INC., JOSE : ROSADO, TRACY LAWSON, MARY MURPHY, HERMES PINEDA, GIGI JENSON, KEN MARTIN, JON ROITMAN, RICK HOEFLING, JOHN/JOHN DOES (1-50) and ABC CORP. (1-20) (fictitious parties whose identities are not now known) : | **OPINION** <br><br> Civil Action No. 07-5530 (DMC) (MF) |
| Defendants. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Continental Airlines, Inc., Jose Rosado, Tracy Lawson, Mary Murphy, Hermes Pineda, Gigi Jenson, Ken Martin, Jon Roitman, Rick Hoefling, John/John Does (1-50) and ABC Corp. (1-20) (fictitious parties whose identities are not now known) (collectively "Defendants") to dismiss Plaintiff Guiseppe Gervasio's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the parties' submissions, and based upon the following, it is the finding of this Court that Defendants' motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **denied** and Plaintiff's claims are **remanded** to state court.

I.  BACKGROUND[1]

Plaintiff was employed by Defendant Continental Airlines, Inc. ("Continental") at Newark Liberty International Airport ("Newark Airport") from 1993 until September 12, 2006. On September 11, 2006, Plaintiff escorted a relative through an unauthorized security check point, different from the security check point all passengers were required to use. Plaintiff then left his relative unattended at the boarding gate without a boarding pass, violating Continental's policy and various federal regulations. This security breach was exacerbated by the fact that it occurred on the fifth anniversary of the terrorist attacks on the United States and led to a complete evacuation of Newark Airport's Terminal C disrupting Continental's operations for the day. Plaintiff's employment with Defendant was terminated the following day.

Plaintiff appealed the termination through Continental's internal appeal procedures, and Plaintiff's employment was subsequently reinstated on October 20, 2006. The reinstatement included conditions which Plaintiff was required to satisfy before he could formally be reinstated to his job with Continental. These conditions included obtaining a new Port Authority ID ("PAID") security badge within six months, otherwise Plaintiff would be officially terminated. Plaintiff did not receive his PAID security badge within the requisite amount of time and did not fulfill the conditions of reinstatement. He was terminated again on June 7, 2007.

Plaintiff alleges that prior to the incident on September 11, 2006, he routinely observed other Continental employees escorting passengers through a security checkpoint other than the one all passengers were required to use. Plaintiff claims that he was never informed that he could not escort passengers this way nor was he informed that he was required to remain with these passengers at the

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

gate until they boarded the plane. Plaintiff claims he had informed Continental about other employees' use of the security checkpoint for passengers, but was told not to worry about it. Plaintiff also reported to various federal agencies about numerous violations of federal security regulations being committed by Continental employees at Newark Airport.

Subsequent to his second termination, on August 2, 2007, Plaintiff filed a complaint with the Occupational Safety & Health Administration (OSHA) under the Airline Deregulation Act ("ADA") challenging his termination. Plaintiff filed the complaint on September 11, 2007, in New Jersey Superior Court alleging that Continental retaliated against him in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") and alleged other tortious claims.

The matter was removed to the United States District Court for the District of New Jersey on November 16, 2007. The State court ruled that Plaintiff's state law claims are preempted by the Airline Deregulation Act, which was the cause for removal.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F. 3d 478, 483 (3d Cir. 1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atlantic Corp. v. Twombly, the Supreme Court clarified the Rule 12(b)(6) standard. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

3

doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Id. at 1968 (citing Conley, 355 U.S., at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### III.  DISCUSSION

#### A.  Preemption

The ADA was enacted in 1978 "to prevent the states from re-regulating airline operations so that competitive market forces could function." Gary v. The Air Group, Inc., 397 F.3d 183, 186 (3d Cir. 2005) (citing Taj Mahal Travel v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998)). In order to do so, Congress included a preemption clause in the statute which states that "a State... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The Whistleblower Protection Program ("WPP") amended the ADA in 2000. The WPP is aimed at protecting those airline employees who report violations of airline regulations and violations of airline safety standards from retaliatory discharge. See 49 U.S.C.S. § 42121(a). The WPP contains no preemption clause and the issue has arisen in various courts as to whether the preemption clause of the ADA extends to the WPP consequently preempting state whistleblower protection laws. Precedent on this issue has produced a split among the Circuits. In Botz v. Omni Air Int'l, 286 F.3d 488, 497 (8th Cir. 2002), the United States Court of Appeals for the Eighth Circuit ruled that the WPP was meant to preempt state whistleblower protection laws reasoning that "[i]n fashioning a single, uniform standard for dealing with employee complaints of air-safety violations, Congress furthered its goal of ensuring that the price, availability, and efficiency of air transportation rely primarily on market forces and competition rather than

4

allowing them to be determined by fragmented and inconsistent state regulation." The Botz Court reasoned that given the expansive preemption clause in the ADA, "we would expect Congress to have directed language in the WPP to the issue of federal preemption only if it had been Congress's intent that the WPP not exert any pre-emptive effect upon state whistleblower provisions." Id. The United States Court of Appeals for the Eleventh Circuit, however, ruled in Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1263 (11th Cir. 2003), that the WPP was not meant to preempt all state law whistleblower claims finding that "[b]ecause the WPP says nothing about pre-emption and this silence is ambiguous, we find its enactment less probative of Congressional intent regarding the pre-emption of state whistleblower claims than did the Eighth Circuit." The Branche Court noted that Congress was not trying to set forth a uniform standard for employee complaints of air-safety violations, but rather Congress "simply added an additional remedy for plaintiffs seeking to advance a retaliatory discharge claim." Id. at 1264.

The Court of Appeals for the Third Circuit, upon hearing this issue, ruled similarly to the Eleventh Circuit in Branche. In Gary, this Circuit found that since the WPP does not speak to the issue of preemption, "Congress's silence renders its intent "ambiguous" at best and thus should not serve as a basis for expanding ADA preemption."Gary, 397 F.3d, at 190. This Circuit also highlighted that preemption should not be easily inferred when it is not expressly stated. Id. In agreeing with the Eleventh Circuit's ruling that the WPP does not preempt state law whistleblower claims, our Circuit emphasized that areas like employment law, traditionally left to the states, "should not be disturbed lightly." Id. (citing Branche, 342 F.3d at 1259).

Since the WPP, as amended to the ADA, does not preempt all state law whistleblower claims, the question is then whether Plaintiff's claims are "related to price, route, or service of an air carrier," 49 U.S.C.S. § 41713(b)(1), such that those claims would be preempted by federal law. The Supreme

5

Court has ruled that a state law claim will be preempted when "the law expressly references the air carrier's prices, routes or services, or has a forbidden significant effect upon the same." <u>United Parcel Serv., Inc. v. Flores-Galarza</u>, 318 F.3d 323, 335 (1st Cir. 2003) (citing <u>Morales v. TWA</u>, 504 U.S. 374, 388 (1992).

Plaintiff claims that he was discharged as a form of retaliation after reporting safety violations to Continental and other federal agencies. These claims do not pertain to the prices or routes of an air carrier, but might have a relation to the service of an air carrier. Importantly, "neither the Supreme Court nor [its] sister circuits have defined the term 'service of an air carrier' in the context of an employee calling the attention of his employer to the safety qualifications of a co-worker." <u>Id.</u> at 187. The plaintiff in <u>Gary</u> was a co-pilot for the defendant company. <u>Id.</u> at 185. The <u>Gary</u> Plaintiff was discharged after reporting concerns about the qualifications of another pilot and the effects his lack of qualifications could have on the safety of passengers, crew, the public, etc. <u>Id.</u> The <u>Gary</u> Plaintiff subsequently filed suit under New Jersey's CEPA laws for retaliatory discharge. <u>Id.</u> at 186. This Circuit ruled that the <u>Gary</u> Plaintiff's CEPA claims were not preempted by the WPP and the ADA because the "connection to [defendant's] 'service of an air carrier', actual or potential, is simply too remote and too attenuated to fall within the scope of the ADA." <u>Id.</u> at 189. The <u>Gary</u> Plaintiff's reports about possible safety violations did not have the possibility to ground a particular flight and therefore interrupt service because the pilot whom that plaintiff reported was not scheduled to pilot any specific flights at the time of the reports. <u>Id.</u> Similarly, in the subject case, Plaintiff's actions did not have the possibility to ground any particular flight and any connection to Continental's service of its air carriers would be too remote and attenuated for these claims to be preempted. It is important for this Court to point out that Plaintiff is claiming he was discharged for the safety violations he reported. Defendants, in their moving papers, wrongly identify the activities

6

for which Plaintiff claims he was discharged as the incident on September 11, 2006. If this incident, which caused the evacuation of an airport terminal, were, in fact, the activity for which Plaintiff claims he was discharged, then there would be no question that this caused an interruption in Continental's operation of its air carriers. Plaintiff, however, reported safety violations committed by ground crew who do not operate specific flights, and claims he was discharged for divulging such violations to appropriate authorities. These complaints are, therefore, too far removed from effecting the service of Continental's air carriers and, thus, Plaintiff's claims are not preempted by the WPP as amended to the ADA.

**B.      Federal Claims/Remand**

While Plaintiff does not agree that his state law CEPA claims are preempted by the WPP of the ADA, Plaintiff does agree and admit that his claims could also be brought as WPP claims under federal law. Plaintiff, however, did not originally plead these claims and has not filed a cross motion to amend the complaint to include these federal claims. Also, Plaintiff's federal claims are barred by the statute of limitations because he is well beyond the statutory period for filing complaints under the WPP. Pursuant to § 42121(b)(1) of the WPP, "a person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 90 days after the date on which such violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination. 49 U.S.C.S. § 42121(b)(1). Plaintiff's complaint stems from his initial discharge by Continental on September 12, 2006. Plaintiff would have needed to file any claims under the WPP for this discharge no later than December 11, 2006. Even assuming Plaintiff had 90 days from his final discharge on June 7, 2007 to file his WPP complaints, these claims are still barred as untimely. Based on the June 2007 discharge, Plaintiff would have needed to file any federal claims by September 7, 2007. It is

almost a year removed from the latest date on which Plaintiff could have filed any WPP claims. Therefore, any such claims are time-barred. Thus, since Plaintiff's state law CEPA claims are not preempted by federal law and Plaintiff's federal claims are barred, there are no federal claims for this Court to hear and this Court no longer has supplemental jurisdiction over Plaintiff's state law claims. Accordingly, this action must be remanded to state court.

### C. Administrative Remedies

Defendants also argue that Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to exhaust his administrative remedies as he has the same claim pending before OSHA. This argument, however, was only brought up by Defendant in its reply brief in support of this motion and, therefore, will not be considered by this Court.

### IV. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss Plaintiff's Complaint is **denied** and this case is **remanded** to state court. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: July 25 2008  
Orig: Clerk's Office  
cc: Counsel of Record  
    The Honorable Mark Falk, U.S.M.J.  
    File

8